**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HECTOR G. IBARRA-MONTUFAR, | ) |
| | ) No. 12 CV 736 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| CAROLYN COLVIN, Acting Commissioner, Social Security Administration,[1] | ) |
| | ) |
| | ) December 12, 2013 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Before the court is Plaintiff Hector Ibarra-Montufar's motion for fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. §§ 2412(a),(d). Ibarra-Montufar argues that he is entitled to $10,681.59 in fees and $18.30 in costs as a "prevailing party" under EAJA. The motion for fees is granted for the following reasons:

**Background**

In April 2009, Ibarra-Montufar applied for disability insurance benefits pursuant to sections 216(i) and 223(d) of the Social Security Act, alleging that he became disabled on January 3, 2009, as a result of degenerative disk disease. (Administrative Record ("A.R.") 102-03.) After the Social Security Administration denied Ibarra-Montufar's claims initially, (id. at 54), and then again on

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin—who became the Acting Commissioner of Social Security on February 14, 2013—is automatically substituted as the named defendant.

reconsideration, (id. at 60), Ibarra-Montufar requested and received a hearing before an administrative law judge ("ALJ"), (id. at 66). The ALJ conducted a hearing and issued a decision finding Ibarra-Montufar not disabled. (Id. at 20-27.) Ibarra-Montufar filed this action for review of the Commissioner's final decision, and the parties subsequently consented to the jurisdiction of this court. (R. 1, 9.) On May 30, 2013, the court granted Ibarra-Montufar's motion for summary judgment and remanded the case for further proceedings. (R. 33-35.)

As a "prevailing party," Ibarra-Montufar now seeks an award of $10,681.59[2] in attorney and legal assistant fees and $18.30 in costs under EAJA. This requested award involves an hourly attorney rate of $184.25 billed primarily in the month of June 2012. (R. 36-3, EAJA Itemization of Time.) The Commissioner does not contest Ibarra-Montufar's entitlement to recover fees or costs, but she contends that both the number of hours worked and the hourly rate charged are excessive and should be reduced. Additionally, the Commissioner argues that any EAJA award should be granted as payable directly to Ibarra-Montufar, not to his attorney, pending confirmation that Ibarra-Montufar does not owe a pre-existing debt to the government.

---

[2] Ibarra-Montufar initially sought $9,926.17 in fees, representing 53.1 hours of attorney work and 1.5 hours of legal assistant work. In his reply, Ibarra-Montufar seeks an additional $755.42 in fees, representing an additional 4.1 hours of attorney work on the reply brief, for a new total of $10,681.59. (R. 47, Pl.'s Reply at 9-10.)

## Analysis

Pursuant to EAJA, an award of attorney fees "shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125.00 per hour unless the court determines that an increase in the cost of living . . . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii); *Bias v. Astrue*, No. 11 C 2247, 2013 WL 615804, at *1 (N.D. Ill. Feb. 15, 2013). In 2008 the Seventh Circuit recognized that "given the passage of time since the establishment of the hourly rate, a cost-of-living adjustment is warranted." *Tchemkou v. Mukasey*, 517 F.3d 506, 512 (7th Cir. 2008). EAJA does not automatically entitle an attorney to a cost-of-living adjustment, however, and one is not presumed despite the fact that the $125 cap rate was set more than 17 years ago in March 1996. *Mathews–Sheets v. Astrue,* 653 F.3d 560, 563 (7th Cir. 2011). As the Seventh Circuit explained in *Mathews-Sheets,* "[i]nflation affects different markets, and different costs in the same market, in different ways," such that a lawyer seeking an adjustment because of an increase in the cost of living must show that "inflation has increased the cost of providing adequate legal service to the person seeking relief against the government." *Id*. However, "[t]he *Mathews–Sheets* court did not describe any particular method or manner by which a lawyer might demonstrate that inflation has increased the cost of legal services to persons seeking redress against the government." *Shipley v. Astrue,* No. 10 CV 1311, 2012 WL 1898867, at *3 (S.D. Ill. May 23, 2012). This

absence of guidance has led to numerous interpretations of what a litigant must prove when seeking a cost of living increase under EAJA.

In *Mireles v. Astrue*, No. 10 CV 6947, 2012 WL 4853065 (N.D. Ill. Oct. 11, 2012), the district court evaluated *Mathews-Sheets* within the same context as presented in this case and determined as follows:

> *Mathews–Sheets* is best read to require a litigant seeking a cost of living increase under the EAJA to establish two things: (1) that the cost of living in the region has indeed increased to the degree of his requested adjustment, and (2) that his attorney's costs of providing legal services have increased in a manner that tends to show that inflation has indeed raised those costs. Both showings are necessary because general inflation might not raise the particular costs of running a law office, while a particular attorney's increased costs might be attributable to factors other than inflation, such as the attorney's decision to move to a nicer office or to buy more expensive office supplies.

*Id*. at *3. Other courts in this district have reached the same conclusion. *See Claiborne ex rel. L.D. v. Astrue,* 877 F.Supp.2d 622, 626-28 (N.D. Ill. 2012); *Booker v. Colvin,* No. 09 CV 1996, 2013 WL 2147544, at *6 (N.D. Ill. May 16, 2013); *Dewolf v. Astrue*, No. 11 CV 2043, 2012 WL 3260420, at *2-3 (N.D. Ill. Aug. 8, 2012). This court also adopts the reasoning set forth in *Mireles* and likewise applies the two-part analysis.

With this standard in mind, the court turns to the fee request. Ibarra-Montufar supports his requested hourly attorney rate of $184.25 by attaching cost of living calculations based upon the "all items" portion of the Consumer Price Index – All Urban Consumers ("CPI-U"). (R. 36-1.) This court previously held that the CPI-U is an appropriate index by which to show that the cost of living in this region

4

has indeed increased to the degree of the requested adjustment. *See Cobb v. Colvin*, No. 11 CV 8847, 2013 WL 1787494, at *2 (N.D. Ill. April 25, 2013) (approving fee calculation of $184.75 per hour based on the CPI-U); *see also Bias*, 2013 WL 615804, at *2 (approving fee calculation of $181.25 per hour based on the CPI-U "all items" index); *Hamrick v. Astrue*, No. 09 CV 179, 2010 WL 3862464, at *3 (N.D. Ind. Sept. 27, 2010) ("[I]t appears that district courts in the Seventh Circuit have permitted the use of either the national or regional index, provided that plaintiff's counsel justifies the increased rate that he seeks.").

Further, to satisfy *Mathews-Sheets's* directive for additional information proving that inflation has increased the attorney's cost of providing legal services—as opposed to the increase caused, for instance, by an attorney's desire for fancier office space or supplies—Ibarra-Montufar alleges that his attorney has incurred additional expenses in the form of increases to rent (at least 3% annually), employee salaries (ranging from 3-5% annually), health insurance premiums (100% since 1996), Westlaw fees, and continuing legal education conferences, among other things. (R. 36, Pl.'s Mot. at ¶17.) Ibarra-Montufar's attorney, Barry Schultz, avers that he charged a non-contingency hourly rate of $180 in 1996, whereas today he charges $275—an increase of 52%. (Id.) Attorney Schultz explains that the increases in rent, health insurance costs, and salaries are the direct result of inflationary pressures such as increased rents charged by landlords and increased insurance premiums. (Id.) He has also provided affidavits from six attorneys licensed to practice in the State of Illinois, all of whom represent clients seeking

5

Social Security disability benefits, and all of whom testify that they charge hourly rates ranging from $165 to $550 per hour. (R. 36-4, 5, 6, 7, 8, 9.) One of these attorneys, who has been practicing law since 1973, testified that he knows of no attorney who would represent a Social Security client in federal court for less than a fully-adjusted for inflation fee under EAJA. (Id. at 36-4.) Finally, Ibarra-Montufar points out that even the Social Security Administration's own fee agreement process ceilings are 50 percent higher today than they were in 1996. (R. 36 at ¶16.)

The Commissioner counters that these allegations—particularly as to the increased costs associated with running a legal practice—are not relevant here because the majority of the legal work performed on Ibarra-Montufar's file was performed by a contract attorney living in a different state. According to the Commissioner, "usual arguments regarding increased health insurance premiums, office rent, and so forth, do not apply when employing contract attorneys." (R. 43, Govt.'s Resp. at 8.) Furthermore, the Commissioner contends, contract attorneys work for less than the hourly rate sought by lead attorneys, resulting in a cost savings that should be passed along to the government. (Id.)

This court is satisfied with Ibarra-Montufar's proffered evidence indicating that inflation has increased the prevailing market rate for legal work compensable under EAJA. *See also Suess v. Colvin*, 11 CV 4090, 2013 WL 5304094, at *2 (N.D. Ill. Sept. 18, 2013) (noting that other courts within this district have analyzed the same arguments and "have found that similar supporting evidence justifies an inflation adjustment to the EAJA hourly rate"); *Booker*, 2013 WL 2147544, at *7-8

(analyzing similar supporting arguments and awarding an enhanced hourly rate of $169.71). Furthermore, the court is satisfied that the fee request of $184.25 per hour adequately reflects the inflationary effect upon Attorney Schultz's hourly rate. *See Bias*, 2013 WL 615804, at *2 (granting attorney's rate of $181.25 per hour under EAJA); *Shipley*, 2012 WL 1898867, at *3-4 (granting attorney's rate of up to $175.75 per hour under EAJA); *Gonzalez v. Astrue*, No. 10 CV 899, 2012 WL 1633937, at *2 (S.D. Ind. May 9, 2012) (granting attorney's rate of up to $180.23 per hour under EAJA).

The Commissioner's contract-attorney argument does not change this determination, even though the argument has some facial appeal. The Commissioner's position is that because contract attorneys are not "employees" of the lead attorney's law office, an increase in the cost of running a law office has no relevance to the fee requested above the cap rate and, therefore, the Commissioner should only be ordered to absorb the fee paid to the contract attorney. The court is willing to accept the notion that the hourly rate paid to the contract attorney is more likely than not less than the hourly rate sought by Attorney Schultz. But the court is not willing to accept the Commissioner's logic that having a contract attorney perform work on Social Security disability cases has no impact on the cost of running a law office. For example, even though a contract attorney performed work on this case, Attorney Schultz is the attorney of record and has to accept the responsibility for what happens in this case. As such, the contract attorney arrangement Attorney Schultz has put in place may impact his liability insurance

premium. Also, the Commissioner's argument supposes that Attorney Schultz does not have to pay anything to his contract attorneys unless he is able to recover fees. If he does pay the contract attorneys for their work no matter what happens with the appeal, these payments do impact the cost of operating his practice. The Commissioner also neglects to consider the real possibility that Attorney Schultz has no choice but to retain contract attorneys on Social Security disability cases—where he is unable to charge his typical market hourly rate—because of the rise in the cost of running a law office and of having permanent associates. Thus, while the argument has some facial allure, it is neither sufficiently developed nor legally supported.

Numerous other courts in this district have come to a similar conclusion. In *Mireles*, the court rejected the Commissioner's contract attorney argument, stating that its acceptance of a $181.25 hourly rate "is based not on factors unique to [Attorney] Schultz, but rather on increases in the CPI and in the costs of providing legal services." 2012 WL 4853065, at *4. Similarly, in *Brazitis v. Colvin*, 11 CV 7993, 2013 WL 6081017, at *2 (N.D. Ill. Nov. 19, 2013), the court awarded a single enhanced rate for legal work done, regardless of whether the work was done by the lead attorney or by an outside attorney hired to assist him. And in *Suess*, the court noted that inflationary costs such as rent and salary increases impact a law firm, regardless of whether the attorneys are associates or "brief-writing contract attorneys." 2013 WL 5304094, at *3. The *Suess* court noted that the relevant focus is not on the cost of the contract attorney to the law firm, but rather on the

prevailing market rate for the services provided. *Id*. Both the *Brazitis* and *Suess* courts cited to 28 U.S.C. § 2412(d)(2)(D), which provides that in cases where the United States is a party, "[t]he amount of fees awarded . . . shall be based upon prevailing market rates for the kind and quality of the services furnished." *See Brazitis*, 2013 WL 6081017, at *2; *Suess,* 2013 WL 5304094, at *3. The conclusions of these other courts lend support to this court's own reasoning that the Commissioner's argument lacks legal or factual support.

The court also does not find any merit to the Commissioner's next argument—that the amount of time spent on the case was excessive given its "routine" nature and the lead attorney's "years of experience in Social Security disability litigation." (R. 43, Govt.'s Resp. at 1-2.) The Commissioner believes that 37.7 hours is much too high for an initial brief and should be cut in half to about 20 hours. (Id. at 4.) She also believes the 12.2 hours spent on the reply brief is unreasonable and should be cut.[3] (Id.) However, the Commissioner does not point to any single line item that is excessive, and so this request is simply an arbitrary guess as to what the Commissioner believes is reasonable. The court, however, may not reduce the number of hours absent a clear indication of why this is necessary. *See Smith v. Great Am. Restaurants, Inc.,* 969 F.2d 430, 439 (7th Cir. 1992) (noting that in fee award cases, "the district court may not arbitrarily reduce the number of

---

[3] The court is unable to replicate exactly the Commissioner's calculations of 37.7 hours spent on the initial brief and 12.2 hours on the reply, but this is of little import. By the court's own calculation, Ibarra-Montufar's attorneys spent 38.3 hours on the initial brief and 13.5 hours on the reply. (R. 36-3.) This discrepancy is not significant.

9

hours requested; if it reduces hours it should provide a 'concise but clear explanation'"). Furthermore, although Social Security cases follow the same five-step analysis, each case involves unique medical facts and a rather labor-intensive study of the administrative record. *See Suess*, 2013 WL 5304094, at *4. The court does not consider the roughly 38 hours spent on the initial brief, or the 57.2 total hours spent on this case, to be excessive. *See Brazitis,* 2013 WL 6081017, at *1 (concluding that an EAJA request for $10,000 in fees is "in the ballpark" and listing cases); *Verlee v. Colvin*, No. 1:12-CV-45-TLS, 2013 WL 6063243, at *9 (N.D. Ind. Nov. 18, 2013) (finding that 36.4 hours spent on an opening brief is "on the high side" but "not so patently unreasonable as to warrant a reduction"); *Garcia v. Colvin*, No. 1:11-cv-00165, 2013 WL 1343662, at *2 (N.D. Ind. Apr. 3, 2013) (upholding 61.3 hours spent on claimant's appeal); *Schulten v. Astrue,* No. 08 CV 1181, 2010 WL 2135474, at *6 (N.D. Ill. May 28, 2010) (noting that 40-60 hours for EAJA fee cases is within permissible range).

Finally, the Commissioner argues that any EAJA award should be granted as payable directly to Ibarra-Montufar, not to his attorney, pending confirmation that he does not owe a pre-existing debt to the government. (R. 43, Def.'s Resp. at 9-12.) Ibarra-Montufar does not object to this point. As such, the award will initially be payable to Ibarra-Montufar pending confirmation that he owes no pre-existing debt to the government, at which point the award will then convert to being payable to his attorney.

## Conclusion

For the foregoing reasons, Ibarra-Montufar's motion for an award of fees and costs is granted.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**